Argued and submitted April 5, affirmed in part, reversed and remanded in part July 17, reconsideration denied August 23, petition for review denied October 1, 1985
(300 Or 112)

VANDE GRIEND et al,
*Respondents,*

*v.*

PRUITT,
*Appellant,*

STATE SAVINGS & LOAN ASSOCIATION,
*Respondent.*

(83-0408; CA A31484)

703 P2d 980

R. Scott Palmer, Eugene, argued the cause for appellant. With him on the briefs were Timothy A. Sylwester, John C. Watkinson, and Harrang, Swanson, Long & Watkinson, Eugene.

Kathleen A. Evans, Salem, argued the cause for respondents Vande Griend, Hamers and Pyles. With her on the brief was Crothers, Crandall & Evans, Salem.

Robert McCann, Portland, argued the cause for respondent State Savings & Loan Association. On the brief were Paul H. Krueger and Long, Delapoer, Koos and Healy, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

In this action for ejectment, Leroy Pruitt (defendant) appeals from a judgment for plaintiffs and State Savings and Loan Association (State Savings). Defendant was the owner of the property involved. In 1972, he and his wife executed a trust deed to the property to secure a loan from State Savings. In 1982, defendant was in default under the trust deed and foreclosure was commenced by advertisement and sale. On January 13, 1983, plaintiffs purchased the property at a trustee's sale. The proper procedure for a trustee's sale was followed, but defendant argues that a 1975 amendment to the trust deed statutes required State Savings to foreclose the trust deed as a mortgage. He also asserts that the trial court erred in striking a number of his counterclaims and cross-claims.[1] We hold that foreclosure by advertisement and sale was proper but that the trial court erred in striking defendant's seventh cross-claim. In that cross-claim, defendant alleged that State Savings violated an agreement to waive certain of its rights relating to the sale. We therefore affirm as to plaintiffs and reverse and remand as to State Savings on that cross-claim.

In 1972, when defendant and his wife[2] executed the trust deed, ORS 86.710 provided:

> "Transfers in trust of any interest in real property not exceeding three acres may be made to secure the performance of an obligation of a grantor, or any other person named in the deed, to a beneficiary. Where any transfer in trust of any interest in real property is made pursuant to the provisions of ORS 86.705 to 86.795 to secure the performance of an obligation, a power of sale is conferred upon the trustee. The power of sale may be exercised after a breach of the obligation for which the transfer is security; and a trust deed, executed in

---

[1] By an amended answer, defendant alleged an affirmative defense and counterclaims against plaintiffs, and cross-claims against defendants State Savings, Boock, Clark, Nodel, and Northwest Crankshaft Company. The cross-claim defendants were joined as parties pursuant to ORCP 21D(1). Later, Pruitt voluntarily dismissed his cross-claims, ORCP 54A(1), against all the joined defendants, except State Savings. The judgment appealed from dismissed those cross-claims. We congratulate the court and counsel, because we actually have a final, appealable judgment in this multiple party, multiple claim case. ORCP 67A and B. *See, e.g., Blundell v. Holm,* 73 Or App 346, 698 P2d 981 (1985); *Oregonians Against Trapping v. Martin,* 72 Or App 210, 695 P2d 932 (1985).

[2] She later quitclaimed her interest in the property to defendant.

conformity with ORS 86.705 to 86.795, may be foreclosed by advertisement and sale in the manner provided in ORS 86.705 to 86.795, or, at the option of the beneficiary, may be foreclosed by the beneficiary as provided by law for the foreclosure of mortgages on real property."

The 1975 legislature deleted "not exceeding three acres" and added a new subsection (2):[3]

"(2) Transfers in trust of an interest in real property shall be foreclosed as mortgages unless the instrument creating the trust provides that the real property is not currently used for agricultural, timber or grazing purposes." Or Laws 1975, ch 618, § 2.

Defendant argues that the statutory change affected only the remedy by which the beneficiary of a trust deed could enforce its rights under the deed, not the substance of those rights, and that the changes therefore apply to all trust deeds, no matter when they were executed. Because the trust deed at issue does not state that the land is not currently used for agricultural, timber or grazing purposes, the trustee's sale was invalid if defendant's argument is correct.

As defendant recognizes, we must determine the effect of the 1975 amendments on pre-1975 trust deeds by seeking the legislative intent, not simply by applying canons of construction. ORS 174.020; *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981). "Legal rules relating to retroactive and prospective application of statutes are merely rules of construction by which the court attempts to ascertain the probable legislative intent." *Joseph v. Lowery,* 261 Or 545, 552, 495 P2d 273 (1972). Rules of construction do not assist us in this case. We find nothing in the statute or its legislative history which indicates a legislative intent to modify the rules for foreclosing pre-existing trust deeds or any reason the legislature might have decided to make such a modification.[4]

The legislature eliminated the three-acre limitation on trust deeds in order to allow the use of trust deeds for all real estate financing. Because agricultural interests expressed

---

[3] Further amendments in 1979 and 1983 do not affect this case. Or Laws 1979, ch 879, § 1; Or Laws 1983, ch 719, § 2.

[4] *See* Minutes of House Committee on State and Federal Affairs, January 22, February 3 and 19, and March 7, 1975.

concern about the effect of this change on farmers, the legislature required that trust deeds on agricultural land be foreclosed as mortgages. It included grazing and timber lands in that restriction. The legislature was concerned that farmers would be harmed by the advertisement and sale method of foreclosure, because they might not be able to harvest and sell their crops in the short time available to bring their obligations current. Judicial foreclosure would be slower and would provide a one-year redemption period, thus providing time for crops to ripen.

■■ Nothing in the statute or in the legislative history indicates that the legislature considered the effect of this change on pre-existing trust deeds. Before 1975, there was no reason for a trust deed to refer to agricultural or any other particular uses of the land. Few three-acre parcels of land would be useable for agricultural purposes, and trust deeds were thus not a common security device for farm loans before 1975. The practical effect of defendant's position would be to require that all pre-1975 trust deeds be judicially foreclosed. There is no reason to believe that the legislature contemplated such a result or that that result would achieve any purpose which the legislature had in mind. The legislature intended only to broaden the availability of trust deeds and to protect certain future borrowers who might be adversely affected by the change. It had no reason to change the rules applicable to previously executed trust deeds, and the language which it used does not compel a conclusion that it did so. Plaintiffs, as purchasers at the trustee's sale, are the owners of the property, and the trial court did not err in granting them summary judgment on their ejectment claim.

■ Defendant asserted several counterclaims and cross-claims which the trial court dismissed on separate ORCP 21 motions by plaintiffs and by State Savings. Although defendant argues otherwise, with one exception those claims are dependent on his construction of ORS 86.710, which we have rejected. The exception is his seventh cross-claim against State Savings. In that cross-claim, defendant alleged that on January 3, 1983, he and State Savings agreed that the property would not be sold if defendant brought the loan current and paid all of the trustee's costs on or before January 13, 1983, that defendant came to State Savings' office at 11 a.m. on January 13 and tendered the necessary amounts, but that

the sale had already occurred. Defendant also alleged that the property was worth considerably more than the amount received at the trustee's sale. Defendant asserts that he has adequately alleged that State Savings waived the statutory requirement that he make those payments at least five days before the sale in order to reinstate the loan and prevent the sale. *Former* ORS 86.760 (*repealed by* Or Laws 1983, ch 719, § 13; *replaced by* ORS 86.753).

A waiver is the intentional relinquishment of a known right. *Waterway Terminals v. P.S. Lord,* 242 Or 1, 26, 406 P2d 556 (1965); *Wallstreet Properties v. Gassner,* 53 Or App 650, 661, 632 P2d 1310 (1981). Under the allegations of the seventh cross-claim, defendant could prove a conditional waiver by State Savings, his reliance on the promise and compliance with the conditions of the waiver, State Savings' failure to honor its agreement and damage to defendant. Defendant's allegations, if proven, would not affect the validity of the sale to plaintiffs. However, defendant would be entitled to damages, because State Savings went through with the sale despite its agreement not to do so.[5] Defendant has adequately alleged a claim against State Savings which is independent of the validity of the sale; he is entitled to a determination of its merits.

Reversed and remanded on defendant Pruitt's seventh cross-claim against defendant State Savings; otherwise affirmed.

---

[5] At this stage of the proceedings we need not consider whether the action of State Savings in continuing with the sale was a valid withdrawal of its alleged waiver. *See Wallstreet Properties v. Gassner, supra,* 53 Or App at 661.